Ruby **EDWARDS**, Appellant,

v.

**SCHOOL BOARD OF the CITY OF NORTON, VIRGINIA, Appellee.**

No. 80–1115.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 14, 1980.

Decided Sept. 1, 1981.

---

952

Janet H. Thurston, Abingdon, Va. (Robert T. Copeland, P. C., Abingdon, Va., on brief), for appellant.

Kenneth P. Asbury, Wise, Va., for appellee.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

The sole issue in this appeal is whether the district court's remedy for a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), is legally adequate.[1] The court held that the Norton, Virginia, School Board discharged Ruby Edwards in violation of the Act. The Board has not appealed this ruling. Edwards appeals from those parts of the judgment that limited her back pay to the unpaid balance of her salary for the current school term and denied her reinstatement. We vacate these

1. The opinion of the district court is reported as *Edwards v. School Board of Norton, Va.*, 483 F.Supp. 620 (W.D.Va.1980).

provisions and remand the case for further proceedings.

I

Edwards is a member of the Worldwide Church of God. She believes that church doctrine requires her to abstain from secular work on holy days, which are designated by various biblical texts and fixed according to Jewish calendar.

The Board hired Edwards in 1967 as a teacher's aide in its federally subsidized Title I program at Norton Elementary School. The program provides individual instruction to educationally deprived students. Letters of employment for teachers' aides under this program are for one year. Renewal is dependent on both the aide's performance and the availability of federal funding for the project. Initially, Edwards prepared teaching materials, collected lunch money, graded papers, supervised playgrounds, and worked in the cafeteria. Later, however, her principal duty was to provide individual instruction to mentally retarded students and slow learners.

The School Board renewed Edwards's letter of employment for the 1968–69 and the 1969–70 school terms. During both of these terms, the School Board accommodated Edwards's religious practices and allowed her to abstain from work and observe her church's holy days.

In the fall of 1971, Edwards was instructed that her absences for the holy days would no longer be permitted. She was told that her increased teaching duties and the unavailability of substitute aides required her daily presence throughout the 180 day school term, except for 5 days sick leave. Her employment was renewed for the 1971–72 school term, and, despite the Board's admonition, she was allowed to observe the holy days.

Edwards's letter of employment was again renewed for the 1972–73 school term. In September, 1972, Edwards's request to attend a religious convocation in observance of the holy days was denied. Nevertheless, she followed her previous practice and abstained from work to observe the holy days. The Board then terminated her employment because of her unauthorized absence.

After her discharge, Edwards filed a complaint with the Equal Employment Opportunity Commission. She received a right to sue letter in April, 1977, and instituted timely action in the district court. She sought reinstatement and back pay from the date of discharge, alleging that she had been unable to find employment except for several months in 1975.

The district court held that the Board failed to prove that accommodating Edwards's religious practices would create an undue hardship on the conduct of the school's operation. It concluded that the Board discharged Edwards in violation of 42 U.S.C. § 2000e–2(a)(1). The Board has not appealed from this part of the district court's judgment.

The court, however, limited Edwards's back pay award to $2,352.82, the unpaid balance of her salary for the 1972–73 school year, and it denied reinstatement. The court based this award on two propositions: first, that Edwards was untenured and had no property interest at stake beyond her one year contract; and second, that the Board would not have rehired Edwards, regardless of her religious practices, because of excessive absences that were not related to her religion.

II

The parties properly recognize that the primary issue in this case involves a question of law. It is whether Edwards, who was discharged in violation of Title VII, must prove a property interest in her employment to establish entitlement to back pay from the date of discharge until the Board makes a valid offer of reinstatement.[2]

2. Edwards phrased the issue as follows:

The district court decision limiting the back pay award to the unpaid balance under the employment contract for the 1972–1973 school year, should be reversed, because in searching for a property interest in a Title VII

To support its conclusion that Edwards was required to prove a property interest in her job beyond her current contract, the district court relied on *Burt v. Board of Trustees*, 521 F.2d 1201, 1205 n.6 (4th Cir. 1975).[3] The Board seeks to sustain the court's ruling by citing *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *Arnett v. Kennedy*, 416 U.S. 134, 94 s.Ct. 1633, 40 L.Ed.2d 15 (1974), *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Funn v. Winston*, 612 F.2d 880 (4th Cir. 1980). These cases, however, are not controlling. They deal with quite a different subject—claims that job holders were discharged without due process of law. The due process clause affords procedural protection to a person's property interest, but it does not create this interest. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Consequently, to prevail the claimants in these cases were required to establish that state law created a property interest in their jobs. *Bishop v. Wood*, 426 U.S. at 344, 96 S.Ct. at 2077. Significantly, the Board cited no case construing Title VII that supports the district court's judgment. Indeed, the district court's conclusion that Edwards was required to prove a property interest in her job appears to be unprecedented in Title VII litigation.

■ In contrast to the procedural rights secured by the due process clause, Title VII creates a substantive right. It was enacted, in part, "to assure that freedom from religious discrimination in the employment of workers is for all time guaranteed by law." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977) (quoting legislative history). 42 U.S.C. §§ 2000e(a), (b), (f), and 2000e–2(a)(1). Again quoting legislative history,

the Court emphasized in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976):

[T]he Act is intended to make the victims of unlawful employment discrimination whole, and . . . the attainment of this objective . . . requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.

■ To remedy an illegal discharge, Congress authorized district courts to require reinstatement and award back pay, 42 U.S.C. § 2000e–5(g), but it did not authorize restricting the award to the unpaid balance of the salary for the remaining period of an employee's current contract. Instead, as the Supreme Court pointed out in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), Congress modeled the back pay provision of Title VII on the antecedent provision of the National Labor Relations Act, 29 U.S.C. § 160(c). The Court explained: "We may assume that Congress was aware that the [Labor] Board, since its inception, has awarded backpay as a matter of course— not randomly or in the exercise of a standardless discretion. . . ." 422 U.S. at 419–20, 95 S.Ct. at 2372–73.

Under the Labor Act the back pay period for an unlawfully terminated employee commences with the date of discharge and continues until the employer makes a valid offer of reinstatement. *Polynesian Cultural Center*, 222 NLRB 1192 (1976); *Winn Dixie Stores, Inc.*, 206 NLRB 777 (1973), enforced, 502 F.2d 1151 (4th Cir. 1974); *NLRB v. Huntington Hospital, Inc.*, 550 F.2d 921, 924 (4th Cir. 1977). Courts of appeals have applied this rule for back pay

action, that court was proceeding under a clearly erroneous view of the applicable law. The Board expressed the issue in these terms:

Whether Appellant was a tenured employee of the Norton City School System giving her a property interest in continued employment thereby entitling her to additional backpay and reinstatement?

3. As the district court noted, *Burt v. Board of Trustees*, 521 F.2d 1201, 1205 n.6 (4th Cir. 1975), cites *Burton v. Cascade School District Union High School*, 512 F.2d 850 (9th Cir. 1975), where the court limited a discharged teacher's back pay award to one and a half years and denied reinstatement. This case, however, did not involve Title VII.

liability in Title VII cases without requiring the employee to prove a continuing property interest in his job. *See, e. g., Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 788 (7th Cir. 1979); *Comacho v. Colorado Electronic Technical College, Inc.*, 590 F.2d 887, 889 (10th Cir. 1979); *Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 153 (5th Cir. 1978); *EEOC v. Enterprise Association Steamfitters Local No. 638,* 542 F.2d 579, 590–91 (2d Cir. 1976); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir. 1976).

The duration of the period for computing back pay awards selected by these courts of appeals is altogether consistent with the purpose of the back pay provision of Title VII. This provision, the Court observed in *Albemarle,* 422 U.S. at 417–18, 95 S.Ct. at 2371–72, serves a dual purpose: it provides a spur to the elimination of discrimination, and it makes persons whole for injuries suffered because of discrimination. Many employees covered by Title VII are hourly workers subject to discharge at will. Others, like Edwards, have short term contracts. To require those who have been subjected to unlawful discrimination to prove a continuing entitlement to their jobs in order to receive back pay awards beyond the terms of their current employment would frustrate the purpose of the Act and countenance discrimination without an effective deterrent.

We fully accept the district court's factual finding that Edwards was employed under a one year contract and that the law of Virginia did not afford her tenure. These facts, however, while significant in other contexts, do not control the right to reinstatement or the duration of a Title VII back pay award. A similar issue arose in *Edwards v. Gladewater Independent School Dist.*, 572 F.2d 496 (5th Cir. 1978), which affirmed a judgment of reinstatement and back pay because the school district discriminatorily refused to renew a black teacher's contract in violation of Title VII. There the court said:

> The [school district] argues on this appeal that the effect of the district court's

decision is to award tenure to the [teacher]. Although tenure has been an important factor in a different type of litigation involving public educational institutions, tenure is irrelevant in the type of case presently before us .... 572 F.2d at 498.

A district court's discretion to deny back pay to a Title VII claimant is not unbounded. Back pay "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes" of the Act. *Albemarle Paper Co.,* 422 U.S. at 421, 95 S.Ct. at 2373. We therefore conclude that a district court does not have discretion to limit a back pay award under Title VII to the period of the claimant's current employment contract.

### III

The district court reinforced its conclusion that Edwards had no property interest in her job beyond her current one year contract by finding that regardless of her religious absences, the Board would not have renewed her contract for the 1973–74 school year. It reasoned that this circumstance, coupled with its understanding of the law, justified denial of reinstatement and the limitation of her back pay to the balance due for the 1972–73 school year.

The evidence disclosed that Edwards's job changed from primarily clerical work, which did not require daily attendance, to instructional duties, which required Edwards's daily presence. The court noted that Edwards had been absent 29½ days during the 1969–70 school term; 13½ days in 1970–71; and 22 days in the 1971–72 term. Based on these facts, which are not disputed, the court stated:

> This court concludes from the evidence that defendant would not have renewed plaintiff's contract for the 1973–74 school term, regardless of her religion, due to inadequate service resulting from excess absences. Therefore, back pay is limited to one year and reinstatement is denied. 483 F.Supp. at 628.

To clarify that it was not denying relief because of Edwards's observance of holy

days, the court, after noting Edwards's increased teaching duties, reiterated, 483 F.Supp. at 628:

Also, in plaintiff's case, her contract would not have been renewed regardless of her religious absences because of the great number of her nonreligious absences. It is concluded that the evidence shows that defendant justifiably would not have renewed plaintiff's contract because her excess absences rendered her services to the school inadequate. Hence, plaintiff is not entitled to reinstatement or back pay to the present date because her contract would not have been renewed for a 'reason other than discrimination on account of . . . religion.' 483 F.Supp. at 628.

We cannot accept the court's finding that Edwards would not have been rehired because of nonreligious absences. No Board member or school official testified to this effect. On the contrary, the Board hired Edwards for the 1972–73 school year despite her nonreligious absences in prior years to which the court adverted. The court made no finding that these absences were inexcusable. Viewing the record as a whole, it is readily apparent that the bone of contention between the Board and Edwards was her observance of her religion's holy days for which it discharged her. As we have previously noted, the court held that the Board had not proved that it could not accommodate these religious absences.

■ It may well have appeared logical to the court that if it were in the position of the Board it would not have rehired Edwards because of her nonreligious absences. But this cannot suffice as a basis for decision. The district court was reviewing the action taken by the Board, which is an administrative agency. In *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), Justice Frankfurter cautioned that a reviewing court should not substitute its judgment for a decision which the agency alone is authorized to make. Although *Chenery* was decided in quite a different context, we believe that the principle it states is applicable to this case. We

therefore conclude that the district court exceeded the bounds of its discretion, as defined in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 413–25, 95 S.Ct. 2362, 2369–75, 45 L.Ed.2d 280 (1975), when it limited back pay and denied reinstatement because it concluded that the Board would not rehire Edwards. This is not to say that Edwards's entitlement to back pay and reinstatement would survive every change of circumstance. For example, if the Board abolished the position of teacher's aide for either educational or financial reasons, Edwards's right to relief would be terminated at the time this change took effect.

## IV

■ Back pay awards in Title VII cases must be reduced by "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against . . . ." 42 U.S.C. § 2000e–5(g). An improperly dismissed employee may not remain idle and recover lost wages from the date of discharge. The employee must make a reasonable effort to find other suitable employment. *See O'Neal v. Gresham*, 519 F.2d 803, 805 (4th Cir. 1975). After an unlawfully discharged employee produces evidence in support of her claim for back pay, contending that she was unable to find comparable work, the employer has the burden of showing that she did not exert reasonable efforts to mitigate her damages. *See Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 787 (7th Cir. 1979); *Sias v. City Demonstration Agency*, 588 F.2d 692, 696–97 (9th Cir. 1978); *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 568 F.2d 593, 598 (8th Cir. 1978); *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir. 1975).

Edwards carried her initial burden to demonstrate the economic loss she suffered because of the Board's discrimination. In addition to proving what she would have earned as a teacher's aide, she testified that except for a brief period in 1975, she has been unemployed since her dismissal despite an active and continuous search for other employment.

In view of its ruling limiting back pay, the district court found it unnecessary to

consider mitigation of damages, and it made no findings of fact on this issue. It expressed the opinion, however, that Edwards's efforts were insufficient. 483 F.Supp. at 629. In an unpublished order the court added that Edwards "has not sustained the burden of proof that she genuinely attempted to mitigate her damages." Thus, the court's opinion appears to have been colored by a misapprehension of the law concerning the burden of proof on the issue of mitigation.

Those parts of the judgment pertaining to the denial of reinstatement and to the amount of back pay to which Edwards is entitled are vacated, and the case is remanded for further proceedings consistent with this opinion. On remand the Board should be afforded an opportunity to show that suitable employment was available but that Edwards did not reasonably attempt to find it. *See Sias, supra*, 588 F.2d at 697. Edwards shall recover her costs, and the district court should supplement its allowance of attorney's fee to reasonably compensate her counsel for services on this appeal.