Orley B. WANGSNESS, Plaintiff,

v.

WATERTOWN SCHOOL DISTRICT NO. 14–4 OF CODINGTON COUNTY, SOUTH DAKOTA and its School Board, Defendants.

Civ. No. 80–4119.

United States District Court, D. South Dakota, S. D.

May 28, 1982.

Dennis C. McFarland, Scott C. Petersen, McFarland & Petersen Law Offices, Sioux Falls, S. D., for plaintiff.

Alan L. Austin, Austin, Hinderaker & Hackett, Watertown, S. D., for defendants.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### CASE SUMMARY

Plaintiff brought this action against his former employer, Watertown School District, under Title VII of the Civil Rights Act of 1964, for religious discrimination in violation of 42 U.S.C. § 2000e–2(a)(1). Specifically, plaintiff alleges that his discharge violated the Act's requirement that employers reasonably accommodate the religious practices of their employees, 42 U.S.C. § 2000e(j). Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e–5(f)(3). After trial to the court, on the merits, this court finds from all the evidence, and adjudges (1) that plaintiff established a prima facie case of religious discrimination under 42 U.S.C. § 2000e–2(a)(1); (2) that defendant failed to make a good faith effort to accommodate plaintiff's religious needs; and (3) that defendant failed to show that any reasonable accommodation would have constituted an undue hardship on the school system.

### FACTUAL BACKGROUND

Plaintiff, Orley B. Wangsness, is a member of the Worldwide Church of God. One of the tenets of that religion requires its members to attend a religious festival known as the Feast of Tabernacles, which is observed annually in the fall for approximately seven days at several locations around the world, including regional locations throughout the United States.

In June of 1973, Wangsness was hired by the Watertown School District as a junior high industrial arts teacher for the 1973–74 school year. Wangsness commenced teaching on August 24, 1973, and taught five classes daily involving approximately 125 students.

In the early part of September, 1973, Wangsness submitted a written request to Glen Robel, principal of the junior high school, for a leave of absence from Thursday, October 11, 1973, through Friday, October 19, 1973, to attend the Feast of Tabernacles at the Lake of the Ozarks, Missouri. Mr. Robel denied the request for time off, as did Dr. Robert H. Cockle, the Superintendent of Schools. Thereafter, Wangsness appeared before the school district's board of education and requested the leave of absence without pay. The board of education denied the request and informed Wangsness that his teaching contract would be terminated if he should decide to attend the religious feast. Despite the board of education's position, Wangsness attended the Feast of Tabernacles, and was subsequently discharged by defendant school district.

Following the termination of his contract, Wangsness filed a complaint with the Equal Employment Opportunity Commission. The EEOC referred plaintiff's complaint to the Commission on Human Rights in and for the State of South Dakota.[1] At approximately the same time, Wangsness filed a separate complaint with the South Dakota Division of Human Rights.[2] On or about June 1, 1977, the EEOC determined that there was reasonable cause to believe that defendant school district had violated Title VII of the Civil Rights Act of 1964 in the manner alleged. Nearly three years elapsed before Wangsness received a Notice of Right to Sue from the United States Department of Justice. Thereafter, Wangsness commenced this action under 42 U.S.C. § 2000e *et seq.*

## I.

### PRIMA FACIE CASE

■ In order to establish a prima facie case of religious discrimination under 42 U.S.C. § 2000e–2(a)(1) and (j), a plaintiff must prove the following elements:

(1) A bona fide belief that compliance with an employment requirement is contrary to plaintiff's religious faith;

(2) plaintiff informed his or her employer about the conflict; and

(3) plaintiff was discharged because of his or her refusal to comply with the employment requirement.

*Brown v. General Motors Corp.,* 601 F.2d 956, 959 (8th Cir. 1979).

■ The testimony at the trial revealed that Orley B. Wangsness became a member of the Worldwide Church of God in 1969. According to the tenets of the Worldwide

Church of God, all male members are required to attend the Feast of Tabernacles held in October of each year. It was not disputed that Wangsness sincerely believes in the tenets of the Worldwide Church of God. Further, testimony revealed that Wangsness informed defendant school district of his obligation to attend the religious festival, and that Wangsness was discharged from his employment with defendant school district when he attended the Feast of Tabernacles without the board of education's approval. This Court finds from the evidence submitted that plaintiff has established a prima facie case of religious discrimination under 42 U.S.C. § 2000e–2(a)(1) and (j).

## II.

### GOOD FAITH EFFORT TO ACCOMMODATE

■ Wangsness having established a prima facie case, the burden shifted to the defendant school district to show that it made a good faith effort to accommodate the religious beliefs of Wangsness, and if those efforts were unsuccessful, to demonstrate that it was unable to reasonably accommodate his beliefs without undue hardship. *Yott v. North American Rockwell Corp.,* 602 F.2d 904, 907 (9th Cir. 1979); and *Anderson v. General Dynamics Corvair Aerospace Division,* 589 F.2d 397, 401 (9th Cir. 1978).

An employer's obligation to reasonably accommodate the religious beliefs of its employees is derived from a 1972 amendment to Title VII, which added the following definition of religion:

1. On February 4, 1974, the Division of Human Rights of the South Dakota Department of Commerce and Consumer Affairs, S.D.C.L. 20–13–2.1, found probable cause to believe that plaintiff had been discriminated against on account of his religion, as he had alleged. After extended depositions and hearing all the evidence, Julian H. Brown, the Hearing Examiner, recommended to the South Dakota Commission on Human Rights that it find that discrimination on the basis of religion had occurred.

2. On October 4, 1974, the South Dakota Commission on Human Rights, S.D.C.L. 20–13, entered its Findings of Fact and Conclusions of Law, stating that the defendant school district did not commit an act of religious discrimination against plaintiff in dismissing him for plainly violating his contract in absenting himself for seven days in the period from October 11 to October 19, 1973. An Order of Dismissal of the complaint was entered by the Commission on Human Rights on November 1, 1974.

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

As the Supreme Court explained, in *Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 2271–2272, 53 L.Ed.2d 113 (1977), "[t]he intent and effect of this definition was to make it an unlawful employment practice under [§ 2000e–2(a)(1)] for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."

■ In the instant case, defendant school district contends that it did not have sufficient time to accommodate the religious observances of plaintiff. The parties, however, stipulated that "sometime in the early part of September, 1973," Wangsness submitted to Glen Robel, principal of the junior high, a request for a leave of absence from October 11th through October 19th. Accordingly, the school district had notice of Wangsness' request for leave at least a month in advance.

Defendant school district further contends that despite its efforts to locate a qualified manual arts teacher to substitute for Wangsness, no such substitute was available. The testimony, however, indicates that the school district's efforts to accommodate Wangsness consisted primarily of a meeting at which the school's administrators reviewed a list of available substitute teachers. Finding no qualified manual arts teacher on the list, the administrators decided to recommend to the board of education that Wangsness' request for leave be denied. The Court views defendant's efforts to accommodate Wangsness as minimal, at best.

More importantly, however, the board of education made it quite clear to Wangsness that it did not intend to accommodate his religious beliefs. Wangsness appeared before the board of education on October 9, 1973 to present his request for leave. The following day the school district's counsel informed Wangsness of the board's decision in a letter, which stated in pertinent part:

An absence of the kind you propose is not included within any of the rules provided by the school district to supplement the relationship of school district and teacher under your contract. The contract requires you to teach 178 days in session after five days have been deducted for days of legal discontinuance.

The Board has reached a conclusion that for you to take the time off you suggest would set up a precedent for which there is no justification, and that if they allowed this absence, it would result in requests for many other types of absences and seriously affect the discipline of the school system, to say nothing of the effect upon the students of being required to have substitute teachers other than in the situations when it is essential, where there is illness or absence because of death in the immediate family of the teacher.

Apparently, a similar request could be anticipated from you each year you are in this system. The members of the Board, as indicated by the discussion, felt that you should have disclosed this situation at the time you were employed.

The Board has concluded, upon our advice, that if you insist upon being absent for the period suggested, a plain violation of contract would be involved and you would be subject to dismissal for violating your contract by being absent without a valid statutory or other rule basis authorizing the absence.

\*     \*     \*     \*     \*     \*

The suggestion has been made that the decision of the Board not to allow your request might involve an unfair or discriminatory practice because of a religious question, the reference being to the statutes on human rights that were adopted in 1972. In my opinion, neither the federal or state statutes on civil

rights have any application as the Board is not discriminating against you on the basis of race, color, creed or religion. It is simply not intending to grant absences for any religious or personal reasons, and the same applies where the absence is for the purpose of attending a convention or other meeting, regardless of whether it is religious or non-religious in character. We are asked by the Board to state that it is sincerely hoped that you will not go, but that if you do, a replacement for you will be hired and your contract will be terminated by virtue of the plain violation of your contract requiring teaching for the requisite period.

The letter reveals that in denying Wangsness' request for leave, the board was more concerned with setting a bad precedent for other types of leave requests than it was with accommodating the religious beliefs of Wangsness. The letter makes no mention of a fruitless attempt to find a qualified substitute which defendant school district now alleges. Nor does it mention any other attempts to accommodate plaintiff's religious beliefs. In fact, the letter states that the Board is "not intending to grant absences for any religious ... reasons." The position asserted by the board is in direct conflict with the obligation under 42 U.S.C. § 2000e *et seq.* to accommodate an employee's religious beliefs.

This Court concludes that the evidence does not sufficiently prove that defendant school district attempted in good faith to accommodate plaintiff's religious beliefs. The Court, however, will examine defendant school district's defense of undue hardship.

### III.

### UNDUE HARDSHIP

Defendant school district contends that it made a good faith effort to accommodate Wangsness' religious beliefs, but was unable to do so without causing a more than de minimis disruption of the school curriculum. *See Transworld Airlines, Inc. v. Hardison, supra;* and *Brown v. General Motors Corp., supra.* Specifically, defendant school district argues that because a qualified manual arts substitute teacher was not available, David Linngren, a junior high guidance counselor, was used as a substitute for plaintiff. Consequently, the 125 students in Wangsness' five classes were taught by a teacher who had no previous training in teaching manual arts, and Linngren's counseling duties were left unattended. Such an arrangement was detrimental to the students in Wangsness' classes, and to those who required Linngren's counseling, and brought undue hardship on the school system. Accordingly, defendant school district argues that it was justified in terminating Wangsness' teaching contract.

To support its theory of undue hardship, defendant school district emphasized at trial its contention that the use of a substitute teacher in any situation causes an undue hardship on the students and the school system. The narrow legal issue before this Court, however, is whether the use of a substitute untrained in manual arts during Wangsness' absence in October, 1973, constituted an undue hardship on defendant school district. With that in mind, the court's inquiry into the claimed hardship will focus on the actual experience of defendant school district during Wangsness' absence.

Prior to leaving for the Feast of Tabernacles, Wangsness prepared a plan under which his students would, in the days of his absence, construct a scaled-down model of the corner of a house. Wangsness discussed the details of this particular project with Linngren, the faculty member selected as his substitute. In addition, Wangsness prepared both a lesson plan for use by the substitute teacher, and a blueprint of the model for the students' use in constructing the project. Further, Wangsness pre-cut the wood required for the project, and made available for use during his absence, an

actual model of the project that he had previously constructed.[3]

David Linngren, a guidance counselor in the junior high, was selected by the defendant school district's administration to substitute for Wangsness. As a guidance counselor, Linngren handled the personal files of the students, supervised testing work, counseled students on a one-to-one basis, and assisted in the lunchroom. Mr. Linngren had gained experience in general carpentry by working for his father, a contractor. In fact, by 1973 Linngren had constructed at least two houses and a garage with his father. In addition, Linngren had received three years of instruction in industrial arts while in high school.

Linngren testified that he did not receive any unfavorable response from the students, their parents or the administration on his performance as a substitute for plaintiff. Likewise, he was not aware of any complaints caused by the absence from his counseling duties. Linngren also testified that he encountered only one major difficulty with the assigned project during Wangsness' absence, which he resolved with the assistance of the other industrial arts teacher at the junior high. Glen Robel, the junior high principal, also testified that he received no complaints or negative comment from students or parents concerning Linngren's teaching of the industrial arts classes, or that Linngren's counseling duties were being neglected. In addition, Wangsness testified that upon his return from the Feast of Tabernacles, he found the students' work to be most satisfactory.

■ Based on the foregoing evidence, the Court concludes the defendant school district failed to satisfy its burden of proving by a preponderance of the evidence that Wangsness' absences in October, 1973 caused an undue hardship. The evidence shows that Wangsness' absence did not affect the efficient operation of the school. Linngren was able to supervise Wangsness'

classes without major incident, and without any apparent adverse effect on the students. While the Court can appreciate defendant school district's position that instruction by a regular teacher is preferable to instruction by a substitute, it is unable to find that Wangsness' absence for seven days was so detrimental that it had a substantial effect on the education program of the school district.

Witnesses for defendant school district testified that students do not benefit from the use of substitute teachers due to the substitute's (1) lack of preparation, (2) inability to control discipline, and (3) lack of knowledge of the individual students. Those factors have an adverse effect on the learning environment. Elements in this case, however, substantially ameliorated potential detriment from use of a substitute teacher. Wangsness had prepared a lesson plan for Linngren's use, and Linngren had the benefit of discussing with him the details of the project which the students were to construct. As a guidance counselor in the junior high school, Linngren was acquainted with the individual students who comprised Wangsness' classes, and there was no testimony indicating that Linngren was unable to control discipline in the classroom. The lesson plan Wangsness prepared was unique in that it enabled the students to profitably occupy their time in class during plaintiff's absence. The assignment was planned to be completed in time for plaintiff's return, and the wooden models to be completed by each pair of students would allow plaintiff to personally grade the work and assess the progress of each student. Since plaintiff had left with the class pre-cut wood, blueprints and a wooden model of the project he had constructed earlier, only minimal daily classroom teaching was required of the substitute, teaching well within the competence of Linngren.

The claimed hardship here springs from defendant school district's position that all

3. In an attempt to work out an acceptable solution, Mr. Wangsness offered to take the leave without pay. Further, Wangsness offered to make up the lost classroom time by teaching specially arranged classes or by doing curriculum planning or other services to make up the lost contract time.

substitute teachers perform a role more akin to that of a babysitter than an educator. This Court, however, must characterize the hardship asserted as the kind of hypothetical hardship which the *Brown* court rejected. *See Brown v. General Motors Corp.*, 601 F.2d at 960. The hypothetical hardship which defendant school district feared would be caused by Mr. Wangsness' absence did not materialize. As stated in *Brown v. General Motors Corp.*, "[i]f an employer stands on weak ground when advancing hypothetical hardships in a factual vacuum, then surely his footing is even more precarious when the proposed accommodation has been tried and the postulated hardship did not arise." *Id.*

In considering the evidence of hardship, the Court is mindful of the board of education's letter to Wangsness denying his request for leave. At that time, defendant school district was more concerned that Wangsness live up to his teaching contract than it was with the hardship that could result from accommodating his religious beliefs. The theory of hardship now urged was apparently a product of hindsight created in preparation for this trial, and was not considered at the time of Wangsness' dismissal.

For the foregoing reasons, the Court concludes that defendant school district failed to demonstrate that accommodating the religious convictions of Wangsness would result in undue hardship. It follows that Wangsness was unlawfully discharged from his employment in violation of 42 U.S.C. § 2000e–2(a)(1).

## IV.

## DAMAGES

The Court must now determine the nature and extent of the remedy to which the plaintiff is entitled. Wangsness seeks reinstatement and an award of back pay equal to his unpaid wages less the income he has earned since his unlawful termination. Defendant school district, however, contends that since Wangsness was not a tenured teacher, his damages should be limited to the amount due on his teaching contract for the 1973–74 school year.

At the outset, the Court concludes that reinstatement is not proper in the present case. As discussed in *Taylor v. Teletype Corp.*, 648 F.2d 1129 (8th Cir. 1981), a court may deny reinstatement in a Title VII action "only for reasons which if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." [*Albemarle Paper Company v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).] *Id.* at 1138.

This Court is governed by basic principles of equity, "[i]n striking the proper balance between competing interests of discriminatees and other employees, including determination of the extent to which the legitimate expectations of non-victim employees should determine when victims are restored to their rightful place . . . ." *Harper v. General Grocers Company*, 590 F.2d 713, 716 (8th Cir. 1979). Defendant school district now employs two fully tenured manual arts teachers in the junior high school. Wangsness' reinstatement would require defendant school district to dismiss one of those manual arts teachers or to utilize their skills in a different teaching capacity. Such an arrangement would produce an inequitable result. Accordingly, plaintiff's request for reinstatement is denied.

The purpose of monetary relief in Title VII actions is to make persons whole for injuries suffered on account of unlawful employment discrimination. *Albemarle Paper Company v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Wangsness contends that he is entitled to the difference between his earnings, had he been employed by defendant school district, and the actual earnings that he was able to obtain with reasonable diligence. *See Vant Hul v. City of Dell Rapids*, 462 F.Supp. 828, 833 (D.S.D.1978). Defendant school district, on the other hand, contends that Wangsness was untenured and had no property interest at stake beyond his one year contract. To

support its position, defendant school district relies on *Edwards v. School Board of City of Norton, Virginia*, 483 F.Supp. 620 (W.D.Va.1980), wherein the district court held that an untenured teacher's award of back pay should be limited to one year because a factual determination was made that defendant would not have renewed her contract for the 1973–74 school term, regardless of her religious practices. *Id.* at 628. The Fourth Circuit Court of Appeals, however, vacated and remanded the district court decision, concluding that a district court does not have discretion to limit a back pay award under Title VII to the period of the claimant's current employment contract. *Edwards v. School Board of City of Norton, Virginia*, 658 F.2d 951 (4th Cir. 1981).

The defendant school district's reliance on cases involving teachers who were discharged without due process of law is misplaced in this Title VII action. As noted by the Court of Appeals in *Norton*, the due process clause secures procedural rights whereas Title VII creates a substantive right. 658 F.2d at 954.

■ The Supreme Court pointed out in *Albemarle Paper Company v. Moody, supra,* that Congress modeled the back pay provisions of Title VII on the antecedent provisions of the National Labor Relations Act, 29 U.S.C. § 160(c). In comparing the back pay provisions of Title VII to the Labor Act, the *Edwards* court made the following observation:

> Under the Labor Act, the back pay period for an unlawfully terminated employee commences with the date of discharge, and continues until the employer makes a valid offer of reinstatement. (Citations omitted). Courts of appeals have applied this rule for back pay liability in Title VII cases without requiring the employee to prove a continuing property interest in his job. (Citations omitted).

658 F.2d at 955. The *Edwards* court also relied on *Edwards v. Gladewater Independent School District*, 572 F.2d 496 (5th Cir.

1978), which affirmed a judgment of reinstatement and back pay because the school district discriminatorily refused to renew a black teacher's contract in violation of Title VII. There, the court said:

> The [school district] argues on this appeal that the effect of the district court's decision is to award tenure to the [teacher]. Although tenure has been an important factor in a different type of litigation involving public educational institutions, tenure is irrelevant in the type of case presently before us . . . ."

572 F.2d at 498. This Court therefore concludes that a back pay award under Title VII should not be limited to the period remaining on Wangsness' teaching contract for the 1973–74 school year.

Defendant school district also contends that Wangsness permitted his complaint to lie dormant with EEOC for over five years, despite the fact that EEOC regulations provide for the automatic issuance of a right to sue letter upon request of the complainant any time 180 days after the filing of the complaint with EEOC.[4] Consequently, defendant school district argues that the time period between the date Wangsness filed his charge with EEOC and the date he received the right to sue letter should be excluded in computing the back pay award. In *Lynn v. Western Gillette, Inc.,* 564 F.2d 1282 (9th Cir. 1977), the Court stated that the "complainant should not be permitted to prejudice the employer by taking advantage of the [EEOC's] slowness in processing claims, . . . [p]articularly where the aggrieved party has consulted counsel and is aware of this right." *Id.* at 1287. In *Kamberos v. GTE Automatic Electric, Inc.,* 603 F.2d 598 (7th Cir. 1979) the court held that where the complainant not only retained counsel but was also a lawyer herself, the district court should have subtracted from the end of the back pay period an amount of time equivalent to the time period between the expiration of the 180 day period and the date when the right to sue letter was actually received by the plaintiff. *Id.* at 603. In the instant case, plaintiff did

---

4. 29 C.F.R. 1601.28 (1981).

not retain counsel until after receipt of the notice of right to sue. Wangsness testified that he had no knowledge of any right to request a notice of right to sue, and that he had made numerous calls to the regional office in Denver to monitor the progress of his complaint. In determining the amount of back pay to be awarded, the Court will not, under the circumstances of this case, take into account Wangsness' lack of diligence in pursuing a right of which he was not aware.

■ Defendant school district contends that Wangsness failed to exercise reasonable diligence in obtaining employment which would mitigate his claim for damages. Specifically, defendant school district argues that Wangsness could have earned as much or more money by obtaining a comparable teaching position outside the Watertown School District. Having chosen not to return to the teaching profession for more than five years, defendant school district argues that Wangsness should be denied back pay for that five year period. 42 U.S.C. § 2000e–5(g) provides, "[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against shall operate to reduce the back pay otherwise allowable." This section provides an income-replacing award, and does not require that an employee's employment subsequent to the discharge be "like" employment. *McDaniel v. Essex International, Inc.*, 509 F.Supp. 1055, 1065 (W.D.Mich. 1981). The statute makes no distinction between various types of interim earnings. The amount which an employee would have otherwise been entitled to in the absence of the discrimination is to be reduced by any earnings acquired during the interim "regardless of the type of work involved." *Merriweather v. Hercules, Inc.*, 631 F.2d 1161, 1168 (5th Cir. 1980). A discharged employee is not required to seek employment similar in nature to the work he performed for his former employer.

■ Plaintiff elected to put his carpentry skills to use as a contractor rather than return to the teaching profession. Defendant school district failed to prove that Wangsness would have earned a greater income in a teaching position outside the Watertown school system than as a self-employed carpenter in the Watertown area. In view of Wangsness' training in industrial arts education, he could easily perform the work of a carpenter. With that in mind, the Court finds that Wangsness exercised reasonable diligence in his attempt to earn an interim income. As a result, Wangsness' back pay award will not be reduced based on defendant school district's allegation of unreasonable mitigation.

■ Wangsness contends that he is entitled to be compensated for the additional mileage he was required to travel to Clear Lake where he taught school in 1978–79, and to Henry, where he taught school in 1979–1980 and 1980–1981. Defendant school district, however, argues that mileage reimbursement would be improper since Wangsness elected to live in Watertown for personal reasons. The Court, however, concludes that an award for mileage reimbursement would be compensatory in nature, and such damages are not available in Title VII cases. 42 U.S.C. § 2000e–5(g) provides only for equitable relief, including back pay, and does not provide for damages. *See Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982); *Harrington v. Vandalia-Butler Bd. of Educ.*, 585 F.2d 192, 194–97 (6th Cir. 1978); and *Pearson v. Western Electric Company*, 542 F.2d 1150, 1151 (10th Cir. 1976). *See also* C. Richey, *Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts*, A48 (Federal Judicial Center, revised edition, 1981).

The Court concludes that plaintiff is entitled to back pay from the date of his unlawful discharge to the date of entry of judgment by this Court, less Wangsness' interim earnings. The parties are hereby directed to determine the amount of back pay award in conformance with this opinion. In the event the parties are unable to determine the amount of back pay due, within thirty days from this date, the Court will hear and decide the issue as to amount.

**342**

The Court also finds that plaintiff is entitled to an award of attorneys fees. The actual amount of the award will be determined in light of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) and expressly approved by the Eighth Circuit in *Allen v. Transit Union, Local 788*, 554 F.2d 876, 884 (8th Cir. 1977), *cert. den.*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977), and *Cleverly v. Western Electric Co.*, 594 F.2d 638, 642 (8th Cir. 1979). Counsel for the plaintiff shall file a statement of reasonable attorneys fees, within twenty days, and defendant's counsel shall have twenty days to file objections. Plaintiff's counsel will have five days to file a reply. Thereafter, the Court will determine a reasonable attorneys' fee award.

This memorandum constitutes the findings of fact and conclusions of law of the Court.