Timothy PRATT, Appellant,

v.

UNIVERSITY OF THE DISTRICT OF COLUMBIA, Appellee.

No. 94–CV–1341.

District of Columbia Court of Appeals.

Argued Dec. 5, 1996.
Decided March 27, 1997.

---

Catherine Kane Ronis, Washington, DC, for appellant.

Edward Schwab, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before TERRY, FARRELL, and KING, Associate Judges.

PER CURIAM:

Appellant Pratt, a former teacher at the University of the District of Columbia (UDC), sued for wrongful discharge based upon alleged violation of his First Amendment rights. A jury found liability and awarded him backpay. This appeal is from post-trial orders of the trial court reducing the amount of the backpay award and denying Pratt's post-trial motion to be reinstated to the teaching faculty. We affirm.

The trial court, while submitting the case to the jury on both liability and damages, reserved ruling on UDC's contention that Pratt had failed as a matter of law to prove damages in the form of lost income beyond the academic year 1979–80. Following trial, the court found that there was no evidence reasonably permitting a jury to conclude Pratt would have received either a contract or tenure retaining him as a teacher beyond 1979–80, so as to permit an award of backpay for the period beyond that academic year. We affirm essentially for the reasons stated by the trial court. A jury verdict may not rest on speculation as to damages. *See District of Columbia v. Howell,* 607 A.2d 501, 507–08 (D.C.1992) (setting aside, as speculative, damage award for future medical expenses). Only bare surmise supported Pratt's claim that UDC would have extended his contract beyond the three-year period it promised him. A trial judge may reduce a damage award when "it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been

there." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2815, at 159 (2d ed.1995). *See also Finkelstein v. District of Columbia,* 593 A.2d 591, 599 (D.C.1991) (en banc) (citation omitted) (" 'considerations of an improper element' justify setting aside verdict [on damages] as excessive"); *Carter v. District of Columbia,* 254 U.S.App. D.C. 71, 90, 795 F.2d 116, 135 (1986) (trial court may reduce damage award without offering plaintiff alternative of new trial if "jury's assessment of damages includes an impermissible component that can be identified and calculated with precision"). The reduction of the damage award to $36,220 plus interest was correct.

Pratt, citing decisions dealing with the remedy for racial or other discrimination under Title VII of the Civil Rights Act of 1964, argues that the trial court's remittitur ruling erroneously placed the burden on him to demonstrate a continued expectancy of employment despite his lack of tenure. *See, e.g., Edwards v. School Bd. of Norton, Va.,* 658 F.2d 951 (4th Cir.1981). *Edwards* and similar cases, however, in refusing "[t]o require those who have been subjected to unlawful discrimination to prove a continuing entitlement to their jobs in order to receive back pay awards beyond the terms of their current employment," *id.* at 955, do so as a matter of statutory construction to enforce the remedial purposes of Title VII and to deter discrimination. *See id.* These decisions do not necessarily govern the issue of ongoing retention of employment and backpay in the First Amendment context of government employment, where the right of expression of employees is balanced against the legitimate interests of the government *qua* employer in regard to retention and like matters. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). Thus it is significant that in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a First Amendment case, the Supreme Court plainly appeared to leave the burden on the plaintiff-teacher "to show from the circumstances of [h]is service—and from other relevant facts—that he has a

legitimate claim of entitlement to job tenure." *Id.* at 602, 92 S.Ct. at 2700. A college, for example, may have created a *de facto* "system [of tenure] in practice," enabling the plaintiff "to prove" a "legitimate claim of entitlement to continued employment absent 'sufficient cause.'" *Id.* at 602–03, 92 S.Ct. at 2700. In the present case, by contrast, the trial court found that "the record does not contain any evidence on the custom and practice with respect to tenure at [UDC]," a finding not clearly erroneous. D.C.Code § 17–305(a) (1989).

In any event, on this record we are convinced that the correct answer to who bore the burden of proof on retention—an issue on which, ultimately, we express no opinion here—would yield no different result in the trial court's analysis. As the trial court stated, the record contains "ample evidence ... of problems plaintiff experienced in the political science department, [of] the dissension among his colleagues to which he contributed[,] and [of] the ongoing severe turmoil which characterized the operation of that department while [plaintiff] was there...."[1] We accordingly find no error in the trial court's remitting of the backpay award.

For the same reason, the trial court correctly rejected appellant's request for reinstatement to his teaching position: if, as a matter of law, his wrongful termination did not entitle him to backpay beyond 1979–80, it necessarily did not entitle him to future employment by way of reinstatement.

*Affirmed.*

---

1. As but one example of the complete estrangement that prevailed between Pratt and his supervisors, in November 1975 the Acting Chairman of the Department of Political Science wrote him a memorandum of censure stating:

> The pattern of performance and professional behavior during this semester is not acceptable. Your behavior during the Student Organization Meeting on Friday, November 7, 1975, is destructive to the Department, the faculty, and the College in which you serve. My position on this matter is shared by other faculty members.
> Although documents I have read seem to indicate that this problem has existed for sometime, I would welcome a reversal of the pattern of performance. Unless this can be reversed, and more collegia[l] performance demonstrated, I must ask the Division Director to join me in initiating severe actions which will guarantee that this behavior is discontinued and more productive performance achieved. Please understand that this memorandum is a censure and a warning that improved performance is immediately required.

Pratt replied in writing by mimicking the memorandum:

> The pattern of performance and professional behavior during this semester, and the igno-

rance of what your duties and responsibilities are, is not acceptable. Your behavior and that of the other three faculty members who attended the Student Organization Meeting on Friday, November 7, 1975, is destructive to the Department, the faculty, the students, the College, and the community in which it serves. My position on this matter is shared by other faculty members and students.

> Although persons I have been able to reach who have known you in your professional capacity, and your resume seem to indicate that this problem has apparently existed for sometime, I would welcome a reversal of the pattern of performance. I would like to see this, especially since I was the one who fought for nearly four years for the college to hire a highly qualified Black political scientist, well recognized and respected by his peers, to head the Department. Unless your performance can be reversed, and more respect demonstrated for the rights and opinions of others, I must ask The President of the University and the student body to join me in initiating the necessary actions which will guarantee that this behavior is discontinued and more productive performance achieved. Please understand that this memorandum is a censure and a warning that improved performance is immediately required.